UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AUDIT BUREAU OF CIRCULATIONS, | ) |
| | ) Case No. 08 CV 3089 |
| Plaintiff, | ) |
| | ) Judge Gettleman |
| v. | ) |
| | ) Magistrate Judge Brown |
| AXIS SPECIALTY INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S SECOND MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

This case arises from Defendant Axis Specialty Insurance Company's ("Axis") bad faith refusal to defend covered claims of its insured, Plaintiff Audit Bureau of Circulations (the "ABC"), in two underlying suits brought by Teletype. In April 2009, the Court granted the ABC's first Motion to Compel and ordered Axis to produce the portions of its claims handling manual that are relevant to this case in advance of the 30(b)(6) deposition of Axis. After counsel for Axis promised to work with the ABC to produce the claims files of the similarly situated insureds, the Court deemed that part of the Motion to Compel moot. After several court appearances, Axis produced sections from its claims manual and certain claims files of similarly situated insureds. Then, at the Axis 30(b)(6) deposition on July 15, 2009, Axis revealed that the claims manual it had produced did <u>not</u> in fact govern its claims handlers at the time of ABC's claims—indeed, Axis had <u>no</u> formal written guidelines in place for the handling of claims like the ABC's. The deposition further revealed that Axis had failed to produce a number of other responsive documents. In addition, Axis withheld documents from both the similarly situated insureds' claims files and the ABC's claims files, but categorically refused to provide a privilege log for the former and provided insufficient privilege logs for the latter.

The lack of privilege logs, the inadequate privilege logs, and the existence of additional responsive documents necessitate this second Motion to Compel. Counsel for the ABC and Axis have conferred multiple times on the telephone to resolve these issues without success. Therefore, the ABC respectfully requests that Axis be compelled to comply with these requests.

## BACKGROUND

### I. Axis Provides Three Insufficient Privilege Logs for Documents Produced in Response to Requests for Production.

Axis asserted broad objections to the ABC's Requests for Production, but produced the underwriting file for the policy in effect from 2006–2007 (the "Policy") and portions of the Teletype claims file. Axis served its first privilege log on Feb. 8, 2009. Exhibit A. The ABC challenged certain entries of "n/a" on the privilege log in the columns for author, receiver, and date. In addition, the log's descriptions were merely of the type of document, such as "Email," "Notes," "Research," or "Overnight Package Information."[1] On May 11, 2009, the ABC and Axis had a telephone conference about the deficiencies in the privilege log. Axis agreed to supplement the descriptions.

Axis served its second Privilege Log on May 18, 2009. Exhibit B. The second log provided generalized descriptions of documents such as "Email from coverage counsel re coverage strategy," "Email to coverage counsel re coverage position and strategy," and "Case law with notes re mental impressions re litigation strategy." The latter was identified as being authored by an "Unknown claim rep." with no receiver and no date. Certain entries still lacked dates or receivers.

On May 27, 2009, the ABC challenged the second privilege log because it did not

---

[1] Incredibly, document AX000776–780 was identified as a "Letter" from Michelle Valencic to the ABC's outside counsel, Michael Dockterman, which would clearly not be privileged. There was no identification of any of the individuals listed and no indication of who was an attorney.

2

provide enough information for the ABC to test Axis' assertions of privilege. The ABC set forth in an e-mail the type of information Axis should provide, including a complete list of individuals who identified the documents, what positions the individuals held, whether any of the e-mails forwarded other e-mails, and a more substantive description of the contents. Exhibit C. On June 1, 2009, counsel for the ABC and Axis had a telephone conference about the deficiencies in the second privilege log, during which Axis told the ABC that what the ABC had was what Axis was willing to provide. Counsel for Axis stated it would be difficult or impossible to identify the several people who had viewed a particular document. The ABC informed Axis of the precedent in this District for adequate privilege logs. Nevertheless, Axis refused to provide more information. Exhibit D.

The ABC sent Axis a letter on June 3, 2009, repeating its request for more information and citing Federal Rule of Civil Procedure 26 and *Allendale Mutual Insurance Company v. Bull Data Systems, Inc.,* 145 F.R.D. 84, 86 (N.D. Ill. 1992). Exhibit E. On June 5, the ABC and Axis had another telephone conference, during which Axis revealed that some withheld documents had been carbon copied to other receivers. Axis agreed to provide an additional carbon copy column on its privilege log but refused to provide more substantive descriptions of the documents. Axis also admitted it had not reviewed the instructions in *Allendale*.

On June 9, 2009, Axis sent the ABC a third privilege log and cover letter. Exhibit F. In the cover letter, Axis provided a list of individuals and their job titles, but no description of their job responsibilities. Counsel asserted the conclusion that all individuals were coverage counsel or in the control group of Axis. Counsel stated that he had "no information to indicate any of the documents left the control group," but did not identify by name all of the individuals who had reviewed the listed documents. Axis refused to provide more substantive descriptions.

## II. Axis Refuses to Provide *Any* Privilege Log for Documents Withheld from the Claims Files Production.

In April and May of 2009 after the ABC's first Motion to Compel, Axis produced claims files for similarly situated insureds. With the Court's supervision and assistance, Axis gave the ABC a list of the approximately 236 claims files numbers with cursory overviews of each file, and a separate report of claims file numbers organized by "close code." After analyzing these materials, the ABC narrowed its production request to 42 specific claims files. The ABC then offered, as it had since the beginning, to go to the offices of counsel for Axis in order to physically review the entire claims files, rather than more summaries, to further narrow the request before copying. Axis finally conceded. The undersigned counsel reviewed the claims files and narrowed the request to approximately 37 claims files which were copied and produced.

When the ABC reviewed the production, it noted some documents were missing. When prompted by the ABC's counsel on June 23, 2009, Axis revealed that it had withheld documents from the claims files on the basis of attorney-client and work product privileges and refused to produce these documents. But Axis refused to identify which documents were withheld and refused to create any privilege log setting forth the bases for the claims of privilege. Axis deemed the privilege log "unwarranted." Exhibit G. On June 25, 2009, the ABC again reminded Axis of their burden of showing why the privilege applies and suggested a telephone conference. Axis responded that it did not intend to provide a privilege log, did not see a phone conference as being fruitful, and that the ABC would have to "see what the court says." *Id.* The ABC repeated its request for a phone call, which then occurred on June 26, 2009 without resolution.

## III. Axis Refuses To Provide Any Documents Not Located In The ABC's Claims Handling File Or The 2006–2007 Underwriting File.

Based on the excerpts from the claims handling manual and the list of similar claims files

4

produced by Axis in April, the ABC began to suspect that the earlier production of Axis' files for the ABC's Teletype claims was not complete. In May, the ABC inquired whether there was another file for the Teletype claims that had not been produced and whether there were any more notes from the claims file that had not been produced. Exhibit H. Counsel for Axis stated on the telephone that Axis had produced all of the files for the Teletype claims, then confirmed in e-mail that all claims notes were either produced or described in Axis' privilege log. Exhibit I.

Then, in preparation for the 30(b)(6) depositions of Axis' corporate representatives, the ABC pointed out to Axis that e-mails regarding the Policy that had been produced by Aon, a non-party respondent in discovery, had not been produced by Axis. The ABC asked Axis in a July 8, 2009 telephone call whether Axis had produced all of the documents it had regarding the Teletype claims and the Policy. Counsel for Axis promised to confirm with Axis. The ABC further clarified that the ABC was verifying that Axis did not have "any documents that would be covered by [the ABC's] requests that [Axis] withheld on some basis that did not get noted on the privilege log." Exhibit J. Counsel for Axis responded on July 9 that "I reviewed [Axis'] document production and [Axis] did not withhold anything from the underwriting file. It looks like some of the emails back and forth with AON simply didn't make it into the file, which happens. Regardless, they were produced by AON. So as far as the underwriting file goes, you have what we have." Exhibit K.

The ABC took the 30(b)(6) deposition of Axis on July 15, 2009. At the deposition, Axis revealed there were other documents related to the ABC's tender of the Teletype Claims or the Policy that had not been included in Axis' production. For example, Edward Seidl revealed that he had created draft ratings worksheets that had not been printed and placed in the underwriting file, but were saved on a computer. Exhibit L, 80:22–82:14. Mr. Seidl also testified that a

5

missing e-mail attachment shown on an e-mail in the underwriting file would be located in the underwriting file for another policy year, but that has not been produced. (*Id.* at 90:5–90:20.) Most critically, Axis revealed that its counsel did not ask Mr. Seidl, the underwriter who was responsible for the ABC account, to search his files or gather any documents for 2006–2007, the Policy period. (*Id.* at 110:6–110:8.) Instead, counsel for Axis asked Mr. Seidl to gather files the week before the deposition, which he then reviewed for the deposition and gave to counsel. Axis has not produced these documents. (*Id.* at 110:9–113:4.)

After the deposition, the ABC asked Axis again via telephone whether Axis had ever looked for any e-mails regarding the Teletype claims or the Policy other than the ones that had been printed for the claims or underwriting file, in light of the admission by Mr. Seidl. The ABC specifically asked whether Axis had ever searched for e-mails of key individuals, such as Leib Dodell, Michael Born, Bob DeMaria, and Sammye Hoss. Axis said the documents gathered by Mr. Seidl had either been produced by Axis or by Aon, so his search turned up nothing the ABC did not have. Counsel promised to consult with Axis regarding the ABC's other questions.

On July 31, 2009, counsel for Axis wrote that Axis had "reviewed [Axis'] production in this matter in conjunction with a review of the privilege log and can confirm to [the ABC] that we have produced all non-privileged portions of the claims file and the underwriting file in this matter, specifically including all non-privileged e-mails contained therein." Counsel further represented that to "the extent a document in the claims file or underwriting file was not produced, it was included on the privilege log." Exhibit M.

In light of the mounting evidence that Axis was unaware of what responsive documents it may even have and because counsel would not confirm whether Axis had conducted a search, the ABC followed up again by e-mail to ask: (a) whether Axis had looked for nine potentially key

6

individuals' files or instructed them to gather documents, (b) whether Axis had ever looked for documents not physically contained in the claims handling file and underwriting file it produced, and (c) whether those documents were produced or included on a privilege log. Exhibit N. Counsel for Axis complained that the ABC's inquiry was "improper and untimely" and refused to answer the question. Exhibit O.

## ARGUMENT

The party seeking to invoke the protection of a privilege has the burden of establishing its elements. *U.S. v. White,* 950 F.2d 426, 430 (7th Cir. 1991). The scope of the privilege is narrow, because it is a derogation of the search for truth. *Id.* A claim of privilege cannot be a blanket claim, but must be made and established on a document-by-document basis. *Allendale,* 145 F.R.D. at 86. Each element must be established as to each document, as the mere existence of an attorney-client relationship is not sufficient to cloak all communications with privilege. *Id.*

This court has repeatedly announced standards for privilege logs. *See e.g. Allendale,* 145 F.R.D. at 88; *FMC Corp. v. Trimac Bulk Transportation Services, Inc.,* No. 98 C 5894, 2000 U.S. Dist. LEXIS 17209 at *1 (N.D. Ill. Nov. 21, 2000); *B.F.G. of Illinois, Inc. v. Ameritech Corp.,* No. 99 C 4604, 2001 U.S. Dist. LEXIS 18930 at *1 (N.D. Ill. Nov. 8, 2001); *Muro v. Target Corp.,* 243 F.R.D. 301 (N.D. Ill. 2007). The log must identify, for *each* document, the date, the author, and *all* recipients, along with their capacities; must describe the document's subject matter, purpose for its production, and a specific explanation of why the document is privileged; and must include sufficient detailed to allow the court to determine whether the party has discharged its burden. *Allendale,* 145 F.R.D. at 88. Failure to comply with these directions compels a finding that the discovery opponent has not met its burden. *Id.*

I. **Axis Must Produce the Documents Removed from the Claims Files because Axis Categorically Refuses to Provide a Privilege Log.**

Axis has had multiple opportunities to establish its claim of privilege. The ABC has given Axis clear guidelines as to what would sustain its burden, and has even directed Axis to the controlling precedent. Axis has willfully refused to provide a privilege log or even identify the documents it withheld from its production of the other insureds' claims handling files. Therefore, this Court should compel the production of those documents, or in the very least, an adequate privilege log. *Target*, 243 F.R.D. at 309 (ordering production of documents where no privilege log was provided)..

II. **Axis's Existing Privilege Log Is Inadequate To Allow Evaluation of the Privilege for the Other Documents Axis Has Withheld.**

For the other documents that Axis refused to produce, Axis must comply with *Allendale* to provide the ABC and this Court enough information to assess the applicability of the privilege. *FMC Corp.*, 2000 U.S. Dist. LEXIS 17209 at *3–4. Axis has had three chances to provide an adequate privilege log. But Axis has failed to provide job descriptions of the listed parties; failed to identify whether listed e-mails include e-mail chains; failed to identify which attorney's "mental impressions" are included; and failed to indicate whether communications were marked as confidential. Axis still has not identified which individuals have viewed a particular document, a fact critical to the issue of whether confidentiality has been preserved. It is impossible to tell whether the communications were limited to the control group.

For example, Axis's production includes a cover letter addressed to Mario D'Aversa, signed by Martha Kent, and sent by Sammye Hoss. Exhibit P. The letter lists three enclosures, including a 7-18-06 draft letter from Clausen Miller. Presumably, that is the 7/18/06 draft letter identified as AX000776–780 on the log. Nowhere on the privilege log are the names Mario

8

D'Aversa or Martha Kent mentioned, and the log also does not identify Sammye Hoss as having seen the document.

Most critically, Axis has recycled the same formulaic descriptions of the documents, such as "Notes with mental impressions re coverage litigation strategy" or "Email from coverage counsel re coverage strategy." These descriptions are prohibited under *Allendale*, especially when describing undated documents and unknown person's impressions. *Allendale*, 145 F.R.D. at 88 (deeming insufficient descriptions such as "letter re claim," "analysis of claim," or "report in anticipation of litigation"). Based on these repeated inadequacies, Axis should be compelled to produce the listed documents. *See Muro*, 243 F.R.D. at 310.

### III. Axis Has Failed To Meet Its Burden Of Establishing Each Element Of Privilege Or Work Product Protection For Each Document

Even if Axis's privilege logs are not so insufficient as a matter of law that production of the documents is warranted, Axis has still failed to show how each document is privileged, and Axis should be ordered to produce those documents that are not privileged or a privilege log sufficient to meet its burden of claiming privilege.

In a diversity case, Illinois state law controls attorney-client privilege, while federal law controls work product protection. *Old Second Nat'l Bank v. Commercial Union Midwest Ins. Co.*, No. 99 C 3941, 1999 U.S. Dist. LEXIS 18246, at *9 (N.D. Ill. Nov. 18, 1999). In Illinois, it is the privilege, not the duty to disclose, that is the exception. *Consolidation Coal Co v. Bucyrus-Erie Co.*, 432 N.E.2d 250, 257 (Ill. 1982). Therefore, the privilege ought to be "strictly confined within its narrowest possible limits." *Waste Management, Inc. v. Internat'l Surplus Lines Co.*, 579 N.E.2d 322, 327 (Ill. 1991). Further, the attorney-client privilege is limited solely to those communications which the claimant either expressly made confidential or which he could reasonably believe under the circumstances would be understood by the attorney as such. *Id.*

9

Attorney-client privilege applies (1) where legal advice of any kind is sought 2) from a professional legal advisor in his capacity as such 3) the communications relating to that purpose 4) made in confidence 5) by the client 6) are at his instance permanently protected 7) from disclosure by himself or the legal advisor 8) except the protections be waived. *Allendale*, 145 F.R.D. at 86. Federal work product protection, on the other hand, applies to materials that are generated *because* of the anticipation of litigation. *Id.* at 87. If materials are generated in the ordinary and regular course of business, and not to prepare for litigation, they are not protected, even if litigation is imminent. *Id.* The claimant must show that the primary motivating purpose behind the creation of a document must be to aid in possible future litigation. *Id.* A document may be created at a time when litigation is anticipated, but that temporal quality alone is insufficient to invoke the privilege. *International Ins. Co. v. Certain Underwriters*, No. 88 C 9838, 1990 U.S. Dist. LEXIS 15867 at *1, *8 (N.D. Ill. Nov. 13, 1990).

In sum, material produced in the ordinary course of business, even if by a lawyer, is not protected by attorney-client privilege because it is business advice rather than legal advice, and because it is not by a legal advisor in his capacity as such. Similarly, such material is not protected work product because it is not created *because* of anticipated litigation. This includes when attorneys, even outside attorneys, act as a claims adjuster, claims process supervisor, or claims investigation monitor and conduct claims review. *Id.* at *17; *see also Chicago Meat Processors, Inc. v. Mid-Century Ins. Co.*, No. 95 C 4277, 1996 U.S. Dist. LEXIS 4495 at *1 (N.D. Ill. Apr. 9, 1996) ("To the extent that [outside counsel] acted as claims adjusters, then, their work-product, communications to client, and impressions about the facts will be treated herein as the ordinary business of the plaintiff, outside the scope of the asserted privileges")). There are three broad categories of documents at issue discussed below. *See* Exhibit F.

A.  **Documents created by Ms. Hoss are not privileged.**

In Axis's 30(b)(6) deposition, Michael Born testified that a "claims handler" is the same as a "claims adjuster," and that a coverage evaluation is one of four standard things a claims adjuster must do on any given claims file. Exhibit Q, 11:12–11:20. Therefore, any documents created by Sammye Hoss, the claims handler/adjuster, prior to the engagement of coverage counsel are clearly business documents outside the scope of the privileges. Moreover, AX000566 is a document from Sammye Hoss to "File" containing "notes re attorney communications about coverage strategy" dated Apr. 26, 2006. Exhibit F. Coverage counsel was not engaged until mid-June (Exhibit Q, 67:21–69:7), and the ABC cannot even begin to assess the applicability of privilege having been given zero indication of which specific attorney communicated and to whom these communications were made.

B.  **Coverage analysis by counsel is not privileged.**

Even after coverage counsel was "engaged," if coverage counsel were merely discussing coverage analysis, strategy, or opinion, counsel was conducting a claims review that is the responsibility of the claims adjuster. Claims review is the ordinary business of an insurance company, and use of coverage counsel cannot shield the claims handling process with a claim of attorney-client privilege or work product. In fact, in a e-mail dated Feb. 6, 2007, Sammye Hoss stated that she "engaged coverage counsel to take a *second look*" at her coverage decision. Exhibit R. Because Axis only states coverage counsel is providing coverage analysis, which is the ordinary business of the insurer, these documents are not privileged.

C.  **Documents regarding "litigation strategy" may not be privileged.**

Documents containing "mental impressions" regarding "litigation strategy" or created "in anticipation of litigation" may or may not ultimately be privileged; the ABC does not have

11

sufficient information to tell. For some documents, Axis does not indicate whose mental impressions are at issue, nor when these documents were created. For example, if they were created in April of 2006, they are highly unlikely to contain litigation strategy. The documents created by Ms. Hoss have no explanation of whose mental impressions they contain, or at whose direction they were prepared.

Also, Axis has demonstrated that its counsel's definition of "in anticipation of litigation" cannot be trusted. Incredibly, counsel for Axis has claimed in writing that *all* material, regardless of when it was created and even if it is undated, has been prepared in anticipation of litigation, with no indication of why it was prepared, whether it was prepared *because* of the anticipated litigation, or which attorney directed its preparation: "[O]ur client has reiterated to us that all material as respects this claim, including undated material, was prepared in anticipation of litigation because, at all times, our client maintained that the underlying claims were not covered." Exhibit F. Even counsel's own client disagreed with this absurd statement, admitting under oath that Axis began to anticipate litigation after receiving the ABC's June 13, 2006 letter, almost two months after it initially denied coverage. Exhibit Q, 93:21–94:12.

Even if the documents were created in anticipation of litigation, the ABC has substantial need for these documents and cannot get them from another source. In a bad faith insurance claim, the "strategy, mental impressions and opinion of [the insurer's] agents considering the handling of the claim are directly at issue." *Logan v. Commercial Ins. Co.*, 96 F.3d 971, 977 (7th Cir. 1996). Axis has a virtual monopoly over evidence of this nature, so allowing the ABC to overcome the privilege is particularly justified. *Id.*

IV.     **Axis Should Produce Redacted Reserve Information**

Axis should produce unredacted versions of the documents AX000201, 204, 254, 540, and 565. Axis does not assert a privilege or protection; it claims merely that these documents contain reserve information. In considering a bad faith claim in third-party insurance, the fact that the defendant established a reserve may be probative on the issue of whether there is a *potential* for liability, and thus reserve information may be relevant to the issue of bad faith. *Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 128 F. Supp. 2d 1148, 1154 (N.D. Ill. 2001). Thus, the ABC requests that this Court order Axis to produce these in unredacted form.

V.      **Axis Should Produce Documents Responsive To The ABC's Requests**

Document requests are governed by the liberal standard set forth in Rule 26(b)(1), which permits discovery regarding "any matter not privileged, which is relevant to the subject matter involved in the pending action." *In re Aircrash Disaster Near Roselawn, Ind.*, 172 F.R.D. 295, 303 (N.D. Ill. 1997). "The phrase 'relevant to the subject matter involved in the pending action' is broadly construed to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Id.*

How Axis interpreted the language of the Policy, what Axis considered when it did so, whether Axis ever admitted a potential for coverage under the Policy, and whether Axis made its decision in good faith are key issues in the case. Accordingly, the ABC requested that Axis produce, among other things, documents related to the Claim, which was defined as any of Plaintiff's requests for insurance benefits from Axis in connection with the underlying lawsuits by Teletype Co., Inc., and related to the Policy, which means the policy numbered ACN 624566 which was for year 2006–2007. *See* Exhibit T, Requests No. 5, 10–12. Axis made thirteen general objections and another six specific objections to the requests and stated it would produce

13

all relevant non-privileged portions of the claims and underwriting files.

As set forth above in the Background section, the ABC has repeatedly asked Axis whether it produced all the responsive documents in its possession. Axis has repeatedly refused to respond directly to this question. The ABC can only conclude that Axis has not searched its files or those of the nine potentially key custodians for responsive documents and is attempting to put the ABC off track for as long as possible. In a case that implicates Axis' knowledge of facts related to the ABC, Axis' interpretation of the Policy, the way Axis handled the ABC's claims, and Axis' good faith, requests for documents related to the Policy and to the Teletype Claims are certainly reasonably calculated to lead to the discovery of relevant evidence and are not overbroad. Therefore, Axis should be compelled to produce <u>all</u> documents responsive to Requests for Production Nos. 5, 10, 11, and 12.

## VI. The ABC Should Be Awarded Its Reasonable Expenses

The ABC requests that this Court award it its reasonable expenses, including costs and attorney fees, for the preparation, filing, and arguing of its Motions to Compel Production of Documents. Axis filed a motion to stay discovery in this case which was denied by the District Court. Rather than fully comply with the District Court's order, however, Axis has attempted to constructively impose its own stay by arbitrarily refusing to produce all of its documents and by refusing to produce adequate privilege logs, despite this Court's admonition that the fact the claims files may have privileged materials in them was the defendant's problem and obligation. *See* Exhibit S, 3:9–3:15.

Moreover, counsel for Axis has made, at best, imprecise and inconsistent representations to this Court and the ABC, causing undue waste of time and money. Counsel for Axis represented that Axis had relevant portions of the claims manual, causing the parties and this

Court to waste time on the first Motion to Compel, only for Axis's 30(b)(6) representative later to testify that this manual was not in effect. Further, counsel for Axis represented to the ABC that Axis maintained that it anticipated litigation at all times, only for the Axis representative later to testified that Axis only anticipated litigation sometime after June 15, 2006. Additionally, Axis has repeatedly refused to give a straightforward answer to the ABC's inquiries regarding what Axis has or has not produced. Finally, Axis has flat-out refused to identify which documents it has withheld on the basis of privilege in blatant and willful disregard of the law of this District. Axis has no substantial justification for its actions. For these reasons, the ABC requests an award of its reasonable expenses for its first and second Motions to Compel. Fed. R. Civ. P. 37; *B.F.G.*, 2001 U.S. Dist. LEXIS 18930 at *21.

## LOCAL RULE 37.2 STATEMENT

The undersigned counsel states pursuant to Local Rule 37.2 that after consultation by telephone and good faith attempts to resolve differences in the manner and on the dates set forth above, counsel for the respective parties are unable to reach an accord.

## CONCLUSION

For all of the foregoing reasons, the ABC respectfully requests that (i) Axis be compelled to produce documents responsive to the ABC's Requests for Production that it indicated on its privilege log; (ii) Axis be compelled to produce the documents withheld from the claims files of similarly situated insureds that were produced; (iii) Axis be compelled to produce documents responsive to the ABC's Requests for Production Nos. 5, 10, 11, 12; (iv) the Court award reasonable expenses, including costs and attorney fees, in the preparation, filing, and arguing of this Motion; and (v) any other relief deemed just.

Respectfully submitted,

/s/ Heather H. Harrison
One of the Attorneys for Plaintiff,
Audit Bureau of Circulations

Michael Dockterman (3121675) (dockterman@wildman.com)
Alison C. Conlon (6272083) (conlon@wildman.com)
Heather H. Harrison (6296693) (harrison@wildman.com)
Wildman, Harrold, Allen & Dixon LLP
225 West Wacker, Suite 3000
Chicago, IL 60606
Telephone: (312) 201-2000
Facsimile: (312) 201-2555

Dated: August 4, 2009

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 4, 2009, a true and correct copy of the foregoing **Memorandum in Support of Plaintiff's Second Motion to Compel Production of Documents**, was electronically filed with the Clerk of the Court for the Northern District of Illinois using the CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the court's CM/ECF system.

/s/ Heather H. Harrison
Heather H. Harrison (6296693)