IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AUDIT BUREAU OF CIRCULATIONS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 C 3089 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| AXIS SPECIALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Audit Bureau of Circulations has filed a complaint against Axis Specialty Insurance Company seeking to recover the cost of defending several related lawsuits filed in the Eastern District of New York pursuant to a "Specialty Errors and Omissions Liability Insurance Policy" issued by defendant (the "Policy"). Defendant has filed a motion for summary judgment based solely upon the unambiguous language of the Policy and the allegations brought against plaintiff in the New York litigation. For the reasons discussed below, defendant's motion is granted.

## FACTS

Defendant is an Illinois corporation that audits and provides independent verification and dissemination of the circulation, readership and audience information of its members, which the complaint describes as "representatives of the publishing community, advertising agencies and advertisers: The Axis Policy provides in pertinent part that defendant insured plaintiff for any sum that plaintiff became "legally obligated to pay as Damages or Claim Expenses because of Claims as the result of a Wrongful Act in performing Insured Services for others." Insured services was defined as, "Audit, verification, attestation, standard setting and consulting

regarding media and trade shows, including the preparation, publication and dissemination of data; the content and services provided over the internet websites of the Named Insured."

"Wrongful Act" is defined as "conduct or alleged conduct by You [plaintiff] or any person or organization for whom You are legally liable: (1) a negligent act, error or omission . . ."[1] Under the Policy, defendant was required to provide a defense to any action that alleged that the plaintiff committed a "wrongful act."

In 2006, Teletype Co., Inc., filed related class actions in the Eastern District of New York against several publishers and distributors of periodicals, along with plaintiff in the instant case (the "Teletype Litigation").  Teletype alleged generally that the publishers and distributors engaged in a fraudulent scheme involving what it termed "check swaps" and "dumping," in which the publishers and distributors falsely reported circulation in far greater amounts than they had actually achieved, resulting in falsely inflated charges to the advertisers who placed their ads in the publications.  In addition, Teletype alleged that plaintiff in the instant case directed the publishers how to "paper over the check-swaps with falsified paperwork" and otherwise intentionally aided and abetted the other defendants' fraud.  The original complaints in the Teletype Litigation also named several of plaintiff's officers and directors.  As the result of a motion to dismiss filed by plaintiff in the Teletype Litigation, the individuals were dropped from the case and Teletype filed amended complaints. Typical of the allegations against plaintiff in the Teletype Litigation is the following:

> 53. Defendant ABC knowingly aided and abetted the Bedford Defendants' false representations to Plaintiff and the other members of the Class, and the Bedford

---

[1] The term "wrongful act" includes other conduct which the parties agree is not relevant to the instant dispute.

        Defendants' fraud could not have been committed without the substantial and knowing participation by the ABC [plaintiff] who knowing agreed to accept false documentation regarding paid circulation for *Laptop* and falsely certify the paid circulation data for *Laptop*.

54.    ABC acted intentionally in permitting the Bedford Defendants to make the false and misleading inflated descriptions and representations of fact concerning circulation data of *Laptop*.[2]

Upon being sued by Teletype, plaintiff demanded that defendant indemnify and defend it in the Teletype Litigation. Defendant refused, and continued to refuse to provide a defense because, it contended, the allegations against plaintiff in the Teletype Litigation constituted solely alleged intentional aiding and abetting of fraud, which was not covered as a "negligent act, error or omission" under the Policy. During subsequent motion practice in the Teletype Litigation, plaintiff was voluntarily dismissed from those actions. Plaintiff now seeks the costs of defense from defendant under the terms of the Policy. Defendant claims that the material undisputed facts (namely, the terms of the Policy and the allegations in the Teletype Litigation) entitle it to judgment as a matter of law. The court agrees.

Summary Judgment Standards

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. FED. R. CIV. P. 56(e); Becker v.

---

[2]The original complaints contain similar allegations against plaintiff.

Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990).  The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion.  Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir. 1993).  This standard is applied with added rigor in cases where issues of intent and credibility often dominate.  Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir. 1993) (citations omitted). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."  Anderson, 477 U.S. at 252.

## DISCUSSION

In determining whether defendant had a duty to defend plaintiff in the Teletype Litigation, the court generally considers only the allegations in the underlying complaints and the relevant Policy provisions.  If the court determines that it is "clear from the face of the underlying complaint that the allegations fail to state facts which bring the case within, or potentially within, the Policy's coverage, the insurer is not responsible to provide or pay for the costs of defense."  U.S. Fidelity & Guaranty Co. v. Wilkin Insulation Co., 144 Ill.2d 64, 68 (1991); Pekin Ins. Co. v. Hallmark Homes, L.L.C., __ Ill.App.3d __, 2009 WL 1803184 at *3 (2d Dist. 2009).  The court thus begins its analysis by examining the allegations against plaintiff

in the Teletype Litigation. As noted above, the complaints in those cases accuse plaintiff of acting intentionally to allow the publishers to "make false and misleading inflated descriptions and representations of fact concerning circulation data" of the publications in question, and that plaintiff "knowingly aided and abetted" the fraud committed by its co-defendants. The complaints and amended complaints in the Teletype Litigation never mention negligence, gross negligence or anything other than knowing and intentional misconduct by plaintiff in aiding and abetting the fraud.

Under New York law, which applied in the Teletype Litigation, a plaintiff who pled the tort of aiding and abetting fraud would be required to plead and prove the existence of the fraud, the defendant's knowledge of the fraud, and the defendant's provision of substantial assistance to advance the commission of the fraud. Lerner v. Foet Bank, N.A., 459 F.3d 273, 292 (2d Cir. 2006); Nathel v. Siegal, 592 F. Supp.2d 452, 468 (S.D. N.Y. 2008). Consequently, the plaintiff in the Teletype Litigation could not hold plaintiff in the instant case liable for anything like a "negligent act, error or omission."

In an attempt to get around this obvious conclusion, which precludes coverage and a duty to defend by defendant, plaintiff raises a number of meritless arguments, primarily the "true but unpleaded facts" doctrine that, in some circumstances, allows the court to consider facts outside the four corners of the underlying pleading. In the cases plaintiff relies upon in connection with this argument, the "true but unpleaded facts" in question were additional facts that were consistent, not contrary to, the allegations in the underlying litigation. Thus, in Edward Gray Corps. v. National Union Fire Ins. Co., 1997 WL 102542 at *5 (N.D. Ill. 1997), the court held that the underlying complaint against the general contractor could be examined with additional

information indicating that a subcontract existed that triggered the insurance coverage in question. This is far different from the instant case, in which the only "unpleaded facts" argued by plaintiff are hypothetical possibilities that the Teletype Litigation plaintiff could establish liability against plaintiff by proving something other than intentional misconduct. That such claims could have been asserted in the Teletype Litigation is irrelevant; the single theory advanced by the plaintiff in that case was intentional aiding and abetting of a fraud. Simply put, possible additional theories of recovery is not the equivalent of a "true but unpleaded fact" that might be considered by the court in determining whether the claims alleged in the underlying litigation fall under the insurance coverage provided by the Policy.

Plaintiff advances several other arguments, which are equally without merit. It alleges that defendant has in the past provided a defense under a reservation of rights in similar cases. So what? Even if plaintiff could prove such conduct, the fact that defendant may have mistakenly provided a defense, or, as it argues in its reply brief, provided a defense as a strategic economic decision in a particular case, does not impact the decision in the instant case. Plaintiff also cites to the deposition testimony of defendant's former chief executive officer, Lieb Dodell, who offered an opinion that the Policy would provide coverage for defense of the Teletype Litigation. Although such testimony could be relevant had the court determined that there was in fact coverage,[3] Mr. Dodell's opinion would generally be an inadmissable statement of law that would be given no more weight by the court than if he had reached the opposite conclusion. Perhaps even more importantly, the opinion in question was apparently based on the former

---

[3]The court notes that plaintiff has included a claim that defendant's denial of coverage and a defense was vexatious and unreasonable under § 155 of the Illinois Insurance Code, 215 Ill. Comp. Stat. 5/155.

CEO's analysis of the fraud exclusion in the Policy, which has never been asserted by defendant as a basis for denying coverage or defense of the <u>Teletype</u> Litigation.

Finally, plaintiff's reliance on <u>Valley Forge Ins. Co. v. Swiderski Elec.</u>, 223 Ill.2d 352 (2006) is equally unavailing. In <u>Valley Forge</u> the court held that a complaint alleging a violation of the Telephone Consumer Protection Act, 42 U.S.C. § 227, based on the mass faxing of unwanted advertisements was an implicit allegation of a violation of the recipient's right of seclusion. Based on that, the court concluded that the insurer had a duty to defend because the underlying complaint alleged an "advertising injury" defined in the policy as "oral or written publication, in any manner, of material that violates a person's right of privacy." Plaintiff argues that <u>Valley Forge</u> stands for the proposition that under Illinois law "the triggering act under the policy can be implicit in the complaint." Even if plaintiff's characterization of <u>Valley Forge</u> is correct, there is nothing in the <u>Teletype</u> complaints that "implicitly" alleges negligence.

## CONCLUSION

The material uncontested facts, consisting of the terms of the Policy and the allegations asserted in the <u>Teletype</u> Litigation, conclusively demonstrate that defendant was not required to provide a defense to plaintiff in the <u>Teletype</u> Litigation. Defendant's motion for summary judgment is granted, and judgment is entered for defendant and against plaintiff.

**ENTER:** August 27, 2009

_____
**Robert W. Gettleman
United States District Judge**