```
                     UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF ILLINOIS (Chicago)


AUDIT BUREAU OF CIRCULATIONS,  )
                               )
             Plaintiff,        )
                               )     Docket No. 08-cv-3089
       v.                      )
                               )
AXIS SPECIALTY INSURANCE       )
COMPANY,                       )     Chicago, Illinois
                               )     April 3, 2009
             Defendant.        )



                           HEARING ON MOTIONS
                              BEFORE THE
               HONORABLE MAGISTRATE JUDGE GERALDINE SOAT BROWN



APPEARANCES:

For Plaintiff:             ALISON C. CONLON
                           WILDMAN, HARROLD, ALLEN & DIXON, LLP
                           225 West Wacker Drive
                           Suite 3000
                           Chicago, IL  60606-1229


For Defendant:             ROGER OCHOA
                           TRAUB LIEBERMAN STRAUS &
                             SHREWSBERRY
                           303 West Madison Street
                           #1200
                           Chicago, IL  60606



Transcribed by:            Riki Schatell
                           6033 North Sheridan Road, 28-K
                           Chicago, Illinois  60660-3046
                           773/728-7281

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.
```

```
 1              THE CLERK:  08-c-3089, Audit Bureau of Circulation
 2    vs. Axis Specialty Insurance.
 3              THE COURT:  Good morning.
 4              MS. CONLON:  Good morning, your Honor, Alison Conlon
 5    for the plaintiff.
 6              MR. OCHOA:  Roger Ochoa for the defendant.
 7              THE COURT:  Well, we're here on the plaintiff's
 8    motion.  I saw in the docket there was some motion the
 9    defendant filed but we didn't get a copy of it.
10              MR. OCHOA:  I apologize for that, your Honor.  We
11    filed an objection to the 30(b)(6) deposition notice,
12    specifically the document rider.
13              THE COURT:  Okay, have you got a copy of it so maybe
14    we can deal with it now?  Did you receive a copy?
15              MS. CONLON:  We did, your Honor.
16              THE COURT:  Okay, well, ordinarily -- Not ordinarily
17    -- Well, ordinarily I wouldn't take a motion that is not
18    actually delivered to my courtroom deputy in the appropriate
19    time, but since we're here on this and I don't want to run up
20    fees, I'll take a look at it if I can since Ms. Conlon has had
21    a chance to take a look at it.  I'm guessing that it probably
22    is a counterpart to the motion that was filed by the plaintiff
23    or relates to same subject matter.
24              MR. OCHOA:  It does relate.  We were both kind of
25    working on our motions as we were discussing how to go about
```

```
 1   reaching an agreement --
 2             THE COURT:  Yes.
 3             MR. OCHOA:  -- on producing these documents which, I
 4   think we talked yesterday and we are actually pretty close.
 5   There's an issue of costs that our client wanted to share
 6   costs.
 7             THE COURT:  Okay.  Are you going to do the sampling
 8   thing then counsel suggested?
 9             MR. OCHOA:  Yes.
10             THE COURT:  That sounds like a very good idea, that
11   there's just too many of these policies to produce all of them
12   and way more than anybody could testify about at a deposition.
13             MS. CONLON:  Sure, sure.
14             THE COURT:   Which is probably --
15             MR. OCHOA:  Right.
16             THE COURT:  -- your point, right?
17             MR. OCHOA:  Main point.
18             THE COURT:  So where are you now with your
19   discussions?
20             MR. OCHOA:  We're at the year for 2006.
21             THE COURT:  Okay.  That was the --
22             MR. OCHOA:  Which would come down to about 236 files
23   which we still thought was a little over-broad, a little
24   burdensome, but at the same time counsel suggested maybe taking
25   a random sample of every third --
```

4

```
 1              THE COURT:  Um-hum.
 2              MR. OCHOA:  -- book with our client.  Our client is
 3    in agreement.  They're looking more towards an every fourth.
 4    They want to keep it around 50 files.
 5              THE COURT:  Um-hum.
 6              MS. CONLON:  I can live with every fourth, your
 7    Honor.
 8              THE COURT:  Yes.
 9              MS. CONLON:  That's not a problem.
10              THE COURT:  Yes, about 50.  How much can you -- I
11    mean and just figure out some way of doing it that you agree is
12    random enough so that you get a representative sample.
13              MS. CONLON:  Yes, I mean I think just plugging
14    through and taking file 1, file 5, file 9, I mean that is
15    perfectly fine with the plaintiff.
16              MR. OCHOA:  Yes.
17              MS. CONLON:  There is an issue that counsel has
18    raised about the costs associated with looking at the files and
19    seeing what the grounds were for either granting or denying
20    coverage and some concerns about confidentiality.  I have
21    offered -- I would be happy to go look and help under an
22    attorneys-eyes-only order and then if I find something that is
23    relevant, we can go from there and craft an order protectively.
24     My sense is that counsel was not --
25              MR. OCHOA:  Yes.
```

5

```
 1            MS. CONLON:  You can speak for yourself.
 2            MR. OCHOA:  Sure.  Our client, and we would agree
 3   with that, would rather have us look through the files first to
 4   insure there's no privileged documents, redact whatever may
 5   need to be redacted before turning them over to counsel.
 6            THE COURT:  Um-hum.
 7            MS. CONLON:  And they've proposed to us that we pay
 8   60 percent of their costs to review and they pay 40, and your
 9   Honor, that's a problem for our client.  I mean we're a non-
10   profit company that is in the business of developing auditing
11   procedures for magazines.  They, on the other hand, are the
12   insurer to whom we paid a large premium, so. . .  And given my
13   offer to do it under an attorneys-eyes-only order and given the
14   relative postures of the parties, a split of costs is not
15   something that I think is a reasonable solution to this issue.
16            THE COURT:  Well, you know, the concern here is --
17   Well, number one, I think there is an argument that these
18   documents are subject to being produced anyway.  I mean there's
19   at least an argument to that effect.  I'm not going to rule on
20   it since you parties seem to be reaching agreement, but I don't
21   think the plaintiff's motion is frivolous.  So there's a basis
22   for arguing their relevance.
23            So to the extent that the reason why the defendants
24   want you and your firm, Mr. Ochoa, to look at them first is for
25   self-protection rather than just the physical processes of
```

1  pulling them out.  I think that's your client's problem.  So
2  maybe there's some way you can expedite this.  Maybe what you
3  could do is have somebody go through quickly.
4          You know, we've got Rule 502 now, Federal Rules of
5  Evidence 502, which is designed for electronic discovery but
6  isn't limited to electronic discovery and that's a rule that
7  says that when you're producing a large volume of documents if
8  something is produced inadvertently that turns out to be
9  privileged, I'm paraphrasing and probably not getting it
10 exactly right, but the gist of it is there's a presumption that
11 there's no waiver.  You used to have to worry about waiver and
12 if there's an order, there's no waiver for purposes of state
13 cases either.  So everybody should be looking at 502 because
14 it's the kind of commercial litigation and employment
15 litigation that comes in federal court is really going to
16 benefit from understanding and using Rule 502.
17         But it seems to me that maybe you could take a quick
18 look and take out what appears to be privileged but -- Because
19 what the plaintiffs, of course, number one they look for the
20 policy manuals and they're looking for the coverage decisions,
21 right?
22         MS. CONLON:  Um-hum.
23         THE COURT:  So the coverage decisions are going to be
24 communicated to the insured so there's no privilege with that.
25 And then craft some simple agreement under which then under

```
 1   502, under which you allow perhaps Ms. Conlon or whatever
 2   (inaudible) to come to your premises, look at the files there,
 3   identify what needs to be copied and you can take like a second
 4   look and see whether there's anything that needs to be redacted
 5   for privacy concerns before it goes to beyond Ms. Conlon's
 6   eyes.
 7              Are you sort of getting what I have in mind?
 8         MR. OCHOA:  Yes.
 9         THE COURT:  (Inaudible) idea?  But --
10         MR. OCHOA:  I understand what you're saying.  I could
11   bring that before our client.  In an effort to keep costs down,
12   I understand Ms. Conlon's argument, Ms. Conlon's proposal to go
13   down there and take a look at these documents but again, our
14   client would like us to go through them first just to take out
15   any privileged documentation.
16         THE COURT:  Um-hum.
17         MR. OCHOA:  And there's also -- We're going to speak
18   with our client again sometime today in the afternoon to talk
19   about more proposals of -- We (inaudible) an agreement and one
20   such proposal was that we weren't sure if they had a filing
21   system in which there was an initial summary sheet up front
22   which might --
23         THE COURT:  Um-hum.
24         MR. OCHOA:  -- be easy for us to just open up a file
25   and say oh, here's what this is about.  Our understanding was
```

1  they don't.  They definitely don't have a computer system that
2  allows them to input documentation and then bring out cases
3  that might match certain search criteria, but if they come
4  forward and say that yeah, we do have this, which they may or
5  not, we don't know at this time, that would then keep costs a
6  little bit lower.
7       THE COURT:  Um-hum.
8       MR. OCHOA:  And at the same time we might then be
9  able to go look through that first as well.
10      THE COURT:  Um-hum.  Well, you raise a very good
11 point.  It might be a good idea if your client would pull out
12 maybe three or four files and send them to you.  Where is the
13 client located?
14      MR. OCHOA:  Kansas City.
15      THE COURT:  And send them to you so you can take a
16 look and see what's in them.
17      MR. OCHOA:  Um-hum.
18      THE COURT:  And what would be involved in looking for
19 privilege.  You know, there may be some kind of summary sheet
20 or something that is privileged but you know, I kind -- You
21 know, to the extent that these things are handled in house
22 among claims people as a matter of business, I would expect
23 that it would be almost rare case in which they'd be sent out
24 to counsel for consultation, but there could be.  There could
25 well be.

9

```
 1            MR. OCHOA:   Yes.
 2            THE COURT:   And I understand your client's desire to
 3   be careful about it.  But I'm just trying to think of ways that
 4   it could be quicker.
 5            MR. OCHOA:   Right.
 6            THE COURT:   You know, fifty files, how big are these
 7   files?  That's another question.  How bit?
 8            MR. OCHOA:   I don't know.
 9            THE COURT:   I mean --
10            MR. OCHOA:   I think your (inaudible).  Your
11   suggestion right now of possibly us receiving a sample --
12            THE COURT:   Yes.
13            MR. OCHOA:   -- of two or three files, look through
14   and --
15            THE COURT:   Yes.
16            MR. OCHOA:   That's something we could propose again.
17    We're going to have discussions this afternoon with our
18   client.
19            THE COURT:   Um-hum.
20            MR. OCHOA:   (Inaudible) and counsel talked last
21   night.  It was already 5:30, our client wasn't in the office
22   anymore so this afternoon or at the latest Monday morning
23   there's going to be more discussions and we can (inaudible) our
24   idea for --
25            THE COURT:   Right.
```

10

1        MR. OCHOA:  -- how big the file actually is.
2        THE COURT:  It's almost always easier to reach
3  agreement if you have a sense of what the parameters are going
4  to be.
5        MR. OCHOA:  Um-hum.
6        THE COURT:  You know, what it physically looks like
7  and what it's going to take to go through it and it's possible,
8  I mean it would be a lot cheaper, to have the 50 files sent up
9  here.
10       MS. CONLON:  Okay.
11       THE COURT:  Now maybe the plaintiffs can pay for
12  that, pay for having the 50 files sent up here.  And that's for
13  your convenience, too.
14       MS. CONLON:  But it's also for his convenience.
15       THE COURT:  I mean it is, you know, but that's a
16  little bit different.
17       MS. CONLON:  Yes.
18       THE COURT:  That's controllable.
19       MS. CONLON:  Right.
20       THE COURT:  That's a fixed cost.
21       MS. CONLON:  That's true, your Honor.
22       THE COURT:  Attorneys' time is kind of a big question
23  mark out there.
24       MS. CONLON:  Yes.
25       THE COURT:  And you're not setting the rates or doing

```
 1   a bunch of other things either, so that --
 2            MS. CONLON:  Okay.
 3            THE COURT:  -- kind of makes it hard to shift that
 4   cost among other things, but to have the 50 files, depending on
 5   the size of the files, we're talking two bankers boxes.
 6            MS. CONLON:  Um-hum.
 7            THE COURT:  That's, you know, what does that cost to
 8   FedEx?  You're going to have it super-insured in some way, but
 9   you know, it can't more than $100.
10            MS. CONLON:  That's true, your Honor, and if that's
11   what we're talking about I can easily say that I would be happy
12   to share that.  I'd like very much the kind of procedure your
13   Honor has proposed where Mr. Ochoa takes the first run-through,
14   I come over, take another look, he can do a follow-up if he
15   likes, I will -- And I'm also comfortable --
16            THE COURT:  Um-hum.
17            MS. CONLON:  -- saying any type of attorneys-eyes-
18   only or under Rule 502 the broadest kind of assurances I can
19   provide about no waivers and the Rule provides.  These things I
20   am readily willing to agree to.  It would help me tremendously
21   to be able to look at the files and know what I'm getting.  So
22   I think working together in this way, provided that Mr. Ochoa's
23   client will agree to it, --
24            MR. OCHOA:  Right.
25            MS. CONLON:  -- would be tremendously beneficial to
```

12

1  keep moving the discovery along.
2           THE COURT:  Okay, and then the policy manuals, are
3  there problems with that?
4           MR. OCHOA:  Yes.  We still have our (inaudible)
5  objections that were filed with the interrogatories to begin
6  with related to counsel's motion to compel.  There was some
7  case law cited in there and we'd actually like a little time to
8  respond.
9           THE COURT:  Okay now, what is the schedule with Judge
10 Gettleman?  Because that's really the big deadline here.
11          MS. CONLON:  It is the big deadline.  Our response to
12 the summary judgment motion is due April 20th and we were
13 supposed to have this 30(b)(6) deposition early next week.  We
14 are prepared, and I think we've agreed --
15          MR. OCHOA:  Um-hum.
16          MS. CONLON:  -- to go to Judge Gettleman and ask for
17 an extension of our deadline but we certainly need to do that
18 soon.
19          THE COURT:  Like next week.
20          MS. CONLON:  Exactly, your Honor, and we also -- What
21 I don't want to do is to have to keep going back --
22          THE COURT:  Right.
23          MS. CONLON:  -- and going back so I was really hoping
24 that we could get some resolution.  It's not going to happen
25 today apparently, but as soon as we can to get some firm

13

```
1    dates --
2             MR. OCHOA:  Um-hum.
3             MS. CONLON:  -- so we know what we need to ask for
4    before Judge Gettleman.
5             THE COURT:  Okay.  Well, Mr. Ochoa, what do you want
6    to do?
7             MR. OCHOA:  In an effort to keep it quick, I mean if
8    we could take seven days to respond.
9             MS. CONLON:  Your Honor, for something like policy
10   manuals, which seems -- It seems very straightforward to me and
11   not something that would require a briefing but obviously I'd
12   defer to your Honor.
13            THE COURT:  Well, we have to get this done quickly.
14            MR. OCHOA:  We've already agreed to ask Judge
15   Gettleman if he would push back the deadline.  I think it's
16   something that probably should have been brought up at the time
17   to be able to get all these depositions in before counsel had
18   the time to respond, or just to coordinate it all.
19            THE COURT:  Well, there was a motion for a stay of
20   discovery but that was denied.
21            MS. CONLON:  Right.
22            MR. OCHOA:  Yes.
23            THE COURT:  And so I don't know what that says about
24   his view of the case but here's -- I need your brief to be in
25   by the 9th because I'm not sure I'm going to be here on the
```

14

```
 1    10th, which is Good Friday.  So I need your brief to be in by
 2    -- any motion to the plaintiff's motion to be done by the 9th,
 3    which is Thursday.
 4              MS. CONLON:  Okay.
 5              MR. OCHOA:  Okay.
 6              THE COURT:  And then I don't even have your motion,
 7    the defendant's motion I don't even have it, so --
 8              MR. OCHOA:  I will get you another copy.
 9              THE COURT:  -- I mean how are we going to deal with
10    that?  Do you feel a need to respond to it?
11              MR. OCHOA:  It was only -- I (inaudible) to interrupt
12    you -- It was the 30(b)(6) stuff that was our objection, which
13    I think we kind of have an agreement on how --
14              THE COURT:  Okay.
15              MR. OCHOA:  -- we're going to try to go forward on
16    it?
17              MS. CONLON:  Yes.  It doesn't pertain to the manuals.
18              MR. OCHOA:  Yes, that's the reason why I (inaudible).
19              THE COURT:  Okay, well, here's what I'm going to do
20    though.  I'm going to have a telephone conference with you on
21    Tuesday.
22              MR. OCHOA:  Okay.
23              THE COURT:  To see how things are going in trying to
24    work this out.  And then perhaps we can make some progress on
25    the issue of these policy manuals, too.
```

```
 1              MS. CONLON:  Yes.
 2              THE COURT:  And that -- What is the nature of your
 3    objection to it?
 4              MR. OCHOA:  Well, we're objecting to three
 5    interrogatories, 8, 14 and 15.
 6              THE COURT:  Right.
 7              MR. OCHOA:  8 doesn't give time constraints.  It
 8    doesn't narrow -- It asks for any and all manuals so . . .
 9              THE COURT:  Well, you can work something out.  I mean
10    you said you would, let's say, your objection was that it was
11    not limited to the time relevant to this litigation for the
12    policy period April 1st, 2006 to April 1st, 2007, and I mean it
13    would seem to me that if it's a time issue you can work that
14    out.
15              MR. OCHOA:  We also believe that it's not relevant to
16    -- not only not relevant to responding first to our motion for
17    summary judgment which was up first, but overall in the general
18    case as well.
19              MS. CONLON:  Judge Gettleman has not imposed those
20    constraints, your Honor.  He --
21              THE COURT:  Well, there's no stay on discovery.
22              MR. OCHOA:  Um-hum.
23              THE COURT:  So discovery is whatever is relevant to
24    this case and I did take a look at your motion for summary
25    judgment.  It argues that the allegations of the complaint on
```

16

```
 1   their face do not generate an obligation to defend --
 2              MR. OCHOA:  Right.
 3              THE COURT:  -- under the policy.  That's the gist of
 4   it.  But on the other hand discovery as to the whole case is
 5   not stayed.  So whether it's relevant to the motion for summary
 6   judgment, which arguably it might be, you know, under a broad
 7   constraint, perhaps there is something.  I don't know the
 8   complete allegations of the complaint.  I don't know the
 9   complete terms of the policy.  So arguably there could be
10   something that is relevant in the manuals of operating
11   procedures regarding the decision to defend which, as we all
12   know, is a broader decision than the scope of indemnification.
13              MR. OCHOA:  (Inaudible).
14              THE COURT:  I don't know.  I'll hear your argument
15   but let's continue the dialog on that topic.
16              MR. OCHOA:  Okay.  (Inaudible).
17              THE COURT:  The response to the motion is due on the
18   9th, and then we'll have a telephone conversation on --
19   conference on the plaintiff's motion.  Then we'll make it on
20   the defendant's motion, too, but get me a copy, counsel.
21              MR. OCHOA:  Okay.
22              THE COURT:  Make sure you get me a copy.
23              Look at your calendars for Tuesday.  Does anybody
24   have a problem with 10:30?
25              MS. CONLON:  I have court in the Daley Center from
```

17

```
1    9:30 until 10:30, your Honor.
2              THE COURT:  Okay.  How about eleven?
3              MS. CONLON:  Eleven would be fine.
4              THE COURT:  Okay?
5              MR. OCHOA:  Eleven.
6              THE COURT:  Eleven?  Okay, counsel and counsel at
7    eleven.  The 7th?
8              MR. OCHOA:  Okay.
9              THE COURT:  Okay, and plaintiff's counsel to initiate
10   the call, get your opposing counsel on the line and call in to
11   my chambers and we'll just see where you are with this.
12             MS. CONLON:  Terrific.
13             MR. OCHOA:  Okay.
14             THE COURT:  And we'll save the money, you won't have
15   to come over.  Maybe we'll get it all worked out by then.
16             MS. CONLON:  Our clients appreciate that, Judge.
17             THE COURT:  Okay.  Then anything else this morning?
18             MS. CONLON:  I don't think so, your Honor.
19             MR. OCHOA:  No.
20             THE COURT:  Okay?  Then defendant's response to
21   plaintiff's motion is due on the 9th and I will talk with you
22   on the 7th at 11:00.  Very good.
23             MR. OCHOA:  Okay.
24             MS. CONLON:  Thank you very much, your Honor.
25             MR. OCHOA:  Thank you.
```

```
1            THE COURT:  All right.
2                     (Hearing adjourned.)




      I, RIKI SCHATELL, certify that the foregoing is a
 correct transcript from the record of proceedings in the
 above-entitled matter.

 /s/ Riki Schatell                          August 2, 2009
                                            Date
```